UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MCCARTHY,<br><br>   Plaintiff,<br><br>  v.<br><br>SERVIS ONE, INC., et al.,<br><br>   Defendants. | Case No. 17-cv-00900-WHO<br><br>**ORDER DENYING APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 5 |

  Plaintiff seeks a Temporary Restraining Order to enjoin the Trustee's Sale on her residence, currently set for March 8, 2017. A hearing on the TRO was held on March 7, 2017. Plaintiff's counsel appeared by telephone and defense counsel appeared in person. Having considered the arguments made and the record before me, the application for a TRO is DENIED.

  Plaintiff submits no evidence to substantiate her claim under California's Homeowner Bill of Rights (HBOR) – the only claim argued as a basis for a TRO – that her 2016 loan modification application was not given a full and good faith review by defendant BSI. Plaintiff submits no evidence to support her claim that she did not receive a reasoned decision from BSI denying her loan modification due to her "financial and other information" in August 2016; correspondence that BSI contends it sent to plaintiff and made available to plaintiff's bankruptcy counsel. Plaintiff submits no evidence showing that *had* she received a good faith review by BSI, she would have qualified for a conventional loan modification in summer or fall of 2016. On this record, plaintiff fails to establish any chance of success, much less a likelihood of success on her HBOR claim.

## INTRODUCTION

  Plaintiff Lisa McCarthy filed her Complaint on January 20, 2017, in the Superior Court of Alameda County. Dkt. No. 1-1. She seeks to enjoin mortgage foreclosure proceedings on her residence that are being undertaken by or at the direction of defendants Servis One, Inc. dba BSI

Financial Services ("BSI"), as the relevant mortgage loan servicer; Christiana Trust, as the Beneficiary of the trust holding the deed of trust on her residence; and Western Progressive, LLC., ("Western"), as the trustee to the deed of trust on her residence. McCarthy alleges causes of action against defendants for: (i) violation of California Civ. Code § 2923.6, which prevents the recording of a Notice of Default ("NOD") and trustee sales while a loan modification request is pending; (ii) Negligence; (iii) Fraud; (iv) Negligent Misrepresentation; (v) UCL, § 17200; (vi) Injunctive Relief under Cal. Civ. Code § 2924.12, which allows for an injunction to stop a violation of § 2923.6.

The case was removed to this Court on February 22, 2017. McCarthy seeks a Temporary Restraining Order to stop the Trustee's Sale of her residence, which is currently scheduled for March 8, 2017.

## BACKGROUND

### I.  PLAINTIFF'S LOAN AND ATTEMPTS AT MODIFICATION

In 2008, plaintiff obtained a $720,000 mortgage loan secured by a deed of trust on her residence ("Property"). Defendants claim that as of January 25, 2017, the outstanding balance was on the loan is $1,109,895.36 and the amount in arrears through February 17, 2017 is $398,872.68. Oppo. 7-8.

Plaintiff defaulted initially in 2009. In 2010, the first round of foreclosure actions were initiated. They were ultimately rescinded in 2013. On November 26, 2014, a new notice of default was recorded by defendant Western Progressive and on April 3, 2015 a Notice of Trustee's Sale recorded. Complaint ¶ 15, Ex. A; Declaration of Tara Spangler [Dkt. No. 1-2] at ECF pg. 101, ¶ 6, Ex. 4. The parties went back and forth with the loan modification process through 2015, with denials based, variously, at different times, on defendants' assertion that plaintiff's paperwork was incomplete, there was no evidence that plaintiff resided in the Property (because it was listed on her tax returns as a rental property), and, ultimately, determination in September 2015 that plaintiff "did not qualify." Spangler Decl. ¶ 11.

The Property was foreclosed upon in October 2015. Spangler Decl. ¶ 14. In response, plaintiff filed her first complaint in Alameda County Superior Court, alleging causes of action

1   under Civ. Code § 2923.6, promissory estoppel, and quiet title. Spangler Decl. ¶ 15, Ex. 12. That
2   case was settled by the parties, and in January 2016 the foreclosure was rescinded; plaintiff
3   dismissed her first lawsuit and released her claims against defendants. Spangler Decl. ¶ 16.

4   On February 9, 2016, Western Progressive issued a new Notice of Trustee's Sale, and that
5   notice was recorded on February 23, 2016. Spangler Decl. ¶ 18, Ex. 15; Complaint ¶ 20, Ex. B.
6   On March 8, 2016, plaintiff filed a Chapter 13 petition in the United States Bankruptcy Court for
7   the Northern District of California. Spangler Decl. ¶ 20. On April 4, 2016, pursuant to plaintiff's
8   motion, the parties were referred to the Bankruptcy Court's Mortgage Modification Mediation
9   Program (MMMP), and the parties engaged in a "loss mitigation" evaluation process under that
10  Program. Spangler Decl. ¶ 22. On April 5, 2016, McCarthy filed a new loan modification request
11  with BSI. Declaration of Lisa McCarthy [Dkt. No. 6] ¶ 10.

12  On June 22, 2016, BSI acknowledged the receipt of the loan modification package but
13  asked for additional information (which plaintiff claims BSI already had or was seeking for the
14  first time). Complaint ¶¶ 22-23; Spangler Decl. ¶ 22. On June 23, 2016, plaintiff was notified that
15  she was not eligible for a HAMP modification because the entity on whose behalf BSI serviced
16  the loan (Christiana Trust) was not a participant. Spangler Decl. ¶ 23, Ex. 18.[1] Following an
17  initial denial for incompleteness, the allegedly missing information was eventually received by
18  BSI in July 2016, and BSI confirmed it possessed a completed application for its review.
19  Complaint ¶ 25; Spangler Decl. ¶¶ 24-28.

20  In an August 23, 2016 letter, BSI informed plaintiff that its "review of your financial and
21  other information indicates that although you may have a hardship, you do not qualify for a loan
22  modification." Spangler Decl. ¶ 29, Ex. 21.[2] At oral argument, plaintiff's counsel insisted that

---

[1] Plaintiff received a materially similar letter dated October 7, 2015. Complaint ¶ 31, Ex. F. Plaintiff argues in her Complaint that these representations were false because BSI participates in HAMP. Complaint ¶¶ 31-32. BSI's position, however, is that the letters refer to the *trustee Beneficiary* (here, defendant Christiana Trust) who does not participate in HAMP. Oppo. 4. Moreover, according to the Bankruptcy Court's docket, plaintiff's bankruptcy counsel acknowledged being told that BSI does not provide for HAMP modifications, and informed the Bankruptcy Court that only the "conventional" loan modification request was still pending. Request for Judicial Notice (filed in Superior Court) [Dkt. No. 1-3] ECF pg. 221.

[2] Plaintiff appears to argue that because in an **August 7, 2015** letter, BSI denied plaintiff's prior

3

plaintiff did not receive the August 23, 2016 letter. But there is no evidence nor allegations from plaintiff to support that assertion (*i.e.*, neither McCarthy's declaration nor the Complaint assert this fact).

In any event, neither plaintiff nor BSI dispute that plaintiff appealed that denial on September 22, 2016.[3] After plaintiff submitted additional information to BSI through her bankruptcy counsel, BSI denied the appeal on November 28, 2016. Spangler Decl. ¶ 32. Plaintiff admits she received or had knowledge of the November 28, 2016 denial of her appeal. Complaint ¶ 34.

On September 26, 2016, the parties participated in the Bankruptcy Court's MMMP mediation with a third-party neutral mediator. According to defendants, the mediation was not successful because plaintiff did not qualify for a modification. On December 7 and 11, 2016, plaintiff filed Amended Chapter 13 plans, stating that she intended to sell the Property. RJN, Exs. 21, 22. The final amended plan was not confirmed and the bankruptcy case dismissed on January 3, 2017.

## II. PROCEDURAL BACKGROUND FOR THIS CASE

Defendants scheduled a trustee's sale for the Property on January 26, 2017. On January 20, 2017, plaintiff filed this case in Alameda County Superior Court. On January 23, the parties appeared in Superior Court and on January 24, a TRO was issued preventing the noticed January

---

loan modification request because it did not believe the Property was her principal residence, the denials in 2016 must have been based on the same reasoning. Complaint ¶ 26, Ex. E. Plaintiff also alleges that she relied on this representation by BSI to mean that the residence issue – which she believed she had already corrected BSI's misunderstanding about in 2015 – was the *only* reason her 2015 modification was denied and that she met all other requirements as of 2015. Complaint ¶ 29. However, BSI's contemporaneous notes from August and September 2015 indicate that while there was a dispute about her residence, BSI eventually acknowledged plaintiff's position that it was her residence. Spangler Decl. Ex. E [Dkt. No. 1-2] at ECF pgs. 158-59. BSI then denied the loan modification application because McCarthy "cannot afford this property," she did not meet the "investor waterfall," "maxed out investor allowance," and post-modification her "FE DTI" ratio would be over 35%. ECF Dkt. No. 1-2 at ECF pg.159. McCarthy's representative was apparently informed of those very reasons for the denial as a basis separate from the residence issue in 2015. *Id*.

[3] At oral argument, plaintiff's counsel explained his belief that the communication between BSI and plaintiff during this timeframe was "oral" and provided to plaintiff's bankruptcy counsel and not plaintiff directly.

4

26, 2017 foreclosure sale. Declaration of Giandominic Vitiello [Dkt. No. 5] ¶ 3. The TRO was conditioned on plaintiff posting a $5,000 bond, which plaintiff says that she did on January 30, 2017. Declaration of Lisa McCarthy [Dkt. No. 6] ¶ 22; Vitiello Decl. ¶ 3; Request for Judicial Notice [Dkt. No. 16], Exs. A & B.[4] Defendants continued the trustee's sale until March 1, 2017.

An OSC re a preliminary injunction was set for February 14, 2017. The parties appeared and the court expressed its inclination to grant a preliminary injunction, but only if plaintiff was able to post a $4,000 bond for each month the case was pending. At a continued hearing on February 16, 2017, plaintiff confirmed that she would be able to post that monthly bond. TRO App. 5; Vitiello Decl. ¶¶ 5, 7. At the February 16, 2017 hearing, after the Alameda County Superior Court judge indicated an intent to grant the motion for preliminary injunction, defense counsel made an oral motion to recuse the judge, who took that matter under submission and set a further hearing for February 23, 2017. Vitiello Decl. ¶ 7. The case was then removed to this Court on February 22, 2017. At the February 23 Superior Court hearing, defense counsel advised the court and the parties that the case had been removed. Vitiello Decl. ¶ 8.

On February 28, 2017, plaintiff filed her application for a TRO in this Court, seeking to enjoin the then-scheduled March 1, 2017 trustee's sale. Dkt. No. 5. Pursuant to the parties' agreement, the trustee's sale was postponed again to March 8, 2017 to allow this matter to be heard by me on March 7, 2017. Dkt. No. 14.

Plaintiff alleges that the conduct of BSI and the other defendants – in elongating the loan modification process by asking for documents already produced and continually asking for additional documents as well as misrepresenting the grounds on which McCarthy was allegedly not qualified for a modification – meant McCarthy was not provided a meaningful opportunity to save the Property from foreclosure. Complaint ¶¶ 39-40. She also asserts that defendants are "obliged" to complete a review of McCarthy's completed application and determine whether or not she is entitled to a modification under § 2923.6(c) prior to taking any foreclosure action. *Id*. ¶

---

[4] Defendants assert there is no evidence in the Superior Court "record" of the bond having been posted. Oppo. 7. But that evidence is provided in plaintiff's Request for Judicial Notice, filed with her Reply.

41. Her main claim, as reiterated in her TRO papers, is that she has a good faith belief that defendants' conspired to foreclose on her Property "regardless of the fact that she does qualify for loan modification," and that defendants' history of providing denials based on inaccurate bases (*e.g.*, that the Property is not her residence) "confirm this belief."  Reply 3.  Plaintiff also argues that defendants have engaged in improper "gamesmanship" by acquiring a bond to cover the TRO, then seeking to recuse the Superior Court Judge after he indicated he was inclined to grant the preliminary injunction, and then removing the case to this Court, causing prejudice to plaintiff.

## LEGAL STANDARD

### I.   TRO

The analysis for granting a temporary restraining order is "substantially identical" to that for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).   In order to obtain a TRO, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities  tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009) (internal citations removed).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

The question on the irreparable harm factor is "whether the applicant will be irreparably injured absent a stay."  *Leiva–Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (internal quotation marks and citations omitted).  Such irreparable harm must not simply be "possible" – instead, the moving party is required to "demonstrate that irreparable injury is likely in the absence of an injunction."  *Id*. (internal quotation marks and citations omitted) (emphasis in original).  "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

## II. CALIFORNIA STATUTES AT ISSUE

### A. Claim under Cal. Civ. Code § 2923.6, known as California's Home Owners Bill or Rights (HBOR)

Section provides in relevant part:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
>> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>>
>> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>>
>> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.
>
> (d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.
>
> (e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:
>
>> (1) Thirty-one days after the borrower is notified in writing of the denial.
>>
>> (2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

### B. Claim for Injunction Under Cal. Civ. Code § 2924.12

That section provides in relevant part:
> (a)

7

> (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.
>
> (2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

Plaintiff seeks an injunction preventing the Trustee's Sale in light of the alleged violation of 2923.6.

## DISCUSSION

### I. MOTION TO REMAND

In Reply (and with the permission of the Court), plaintiff argues that this case should be remanded to Superior Court because defendants went beyond merely defending the state court action by seeking out information as to whether plaintiff would agree to the conditions for the contemplated injunction (the $4,000/month bond) *and* seeking to recuse and replace the state court judge. Given those actions, according to plaintiff, defendants manifested their intent to seek a decision from the state court and only after it became apparent that they would not succeed in their recusal attempt and opposition to the motion for a preliminary injunction, did they remove the case to this Court. These maneuvers, according to plaintiff, show that defendant waived its right to removal and support an immediate remand.

A party, "generally a defendant, may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994), *as amended* (Jan. 20, 1995). That waiver must be "clear and unequivocal" and cannot be shown by a defendant who merely takes action in state court to avoid a judgment being entered (*e.g.*, filing an answer or other responsive pleading), and should not be lost by action in state court "short of proceeding to an adjudication on the merits." *Id*. (internal quotation omitted); *see also*

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 14-CV-02857-WHO, 2014 WL 4651673, at *3 (N.D. Cal. Sept. 16, 2014) (filing of a permissive counterclaim in state court generally results in waiver, the filing of a compulsory counterclaim generally does not); *Koklich v. California Dep't of Corr.*, No. 1:11-CV-01403-DLB, 2012 WL 653895, at *4 (E.D. Cal. Feb. 28, 2012) (noting examples of actions that would indicate an intent to waive removal include: filing a permissive cross-complaint, moving to compel arbitration, and arguing and losing an issue in state court in which removal would act as an appeal of an adverse state court decision; but recognizing that opposing a motion for preliminary injunction would not indicate a waiver of removal); *Hazelwood v. A.W. Chesterton Co.*, No. C 12-1313 CW, 2012 WL 2344103, at *4 (N.D. Cal. June 20, 2012) (defendant "failed to inform the state court promptly of its desire to remove the case to federal court, as it became ever more clear that it was removable. Instead, it proceeded through various pretrial matters and the start of the jury trial before filing its notice of removal."). The non-frivolous question is whether a waiver occurred here.

Plaintiff relies on *Diversified Roofing Corp. v. Pulte Home Corp.*, No. CV12-1880 PHX DGC, 2012 WL 6628962, at *3 (D. Ariz. Dec. 19, 2012). There, the district court found waiver of the right of removal where defendant's

> actions in state court constitute more than the mere filing of a responsive pleading. [Defendant] filed its response early, and did so in an action designed for summary decision by the state court. This suggests that [defendant] elected to accept a decision from the state court. [Defendant's] later request to supplement its response also manifested a clear intent to have the state court decide the issue. It was only when [plaintiff] declined to agree that [defendant] removed to this Court. The Court concludes that these actions clearly showed an intent on the part of [defendant] to obtain a decision from the state court, followed by a strategic removal to this Court when [defendant] thought the decision might be made without its supplemental briefing.

*Id.* * 3.

Here, all of the actions defendants took in state court were in aid of defending against the preliminary proceedings – the TRO and the OSC re preliminary injunction. That defendants contacted plaintiff to see if she was going to be able to fund the bond in support of the preliminary injunction and that defendants made an oral (and un-perfected) California Code of Civil Procedure

9

section 170.6 motion suggest defendants were concerned that the Superior Court judge might grant the preliminary injunction; those actions do not mean defendants *willingly* submitted an issue for determination on the merits in Superior Court. Unlike *Diversified Roofing Corp*, defendants were not willingly participating in an "action designed for summary adjudication" and did not take any measure to suggest they intended to accept a decision from the state court on the merits. Instead, within a matter of weeks after the case was filed, defendants took steps to defend their rights in the preliminary state court proceedings. This situation does not support waiver.

## II.    TRO – LIKELIHOOD OF SUCCESS ON MERITS

The only claims that plaintiff contends support her request for a TRO are her HBOR claims. Plaintiff seeks a TRO based on the strength of her entitlement to an injunction under § 2924.12; she alleges that defendants materially violated § 2923.6(c) when they "dual-tracked" pursuing foreclosure steps while the parties were still negotiating a loan modification. Plaintiff also alleges that defendants continuously characterized her loan modification application as incomplete when it was complete and otherwise failed to do a "good faith" review of her modification request. She argues that the balance of equities is in her favor because she will suffer irreparable injury and that defendants removed this case only to avoid the jurisdiction of the Superior Court which had, thus far, ruled in plaintiff's favor for temporary relief.

### A.    BSI's 2015 Actions

Defendants argue that the 2015 loan modification allegations are irrelevant to any HBOR claim, as plaintiff released any claims in the January 2016 settlement. Plaintiff makes clear in her Complaint and Reply that the current action does not cover issues asserted in the prior litigation. Complaint ¶ 19; Reply 10. Defendants also argue that any violation of California HBOR from conduct in 2015 was remedied by the rescission of the foreclosure sale. That may be so, but it is irrelevant to this current case. Plaintiff discusses the 2015 actions only to show the alleged "bad faith" practice of BSI generally refusing to conduct good faith reviews of McCarthy's loan applications. Reply 10.

### B.    BSI's 2016 Actions

Plaintiff argues that BSI violated HBOR by "dual-tracking" the mortgage modification and

10

the foreclosure process and by failing to review her loan modification in good faith; both of which are required under § 2923.6(c).

### 1.     Standing under HBOR

Defendants initially argue that plaintiff lacks standing to enforce any HBOR violations from 2016, because she falls outside the HBOR definition of a protected "borrower" as she was in bankruptcy proceedings from March 8, 2016 through January 3, 2017, when the bankruptcy case was dismissed. Under HBOR, a borrower does not include "[a]n individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure." Cal. Civ. Code § 2920.5(c)(2)(C).[5] Plaintiff responds that because her bankruptcy case was dismissed before she filed this action, her standing under HBOR was "restored" and she can state her claims under HBOR.

For purposes of qualifying as a "borrower" under HBOR, the appropriate focus is whether a HBOR violation occurred either prior to the filing of the bankruptcy case or after the bankruptcy case was dismissed, and whether bankruptcy proceedings are ongoing. *See, e.g., Withers v. J.P. Morgan Chase Bank N.A.*, No. C 14-0351 SBA, 2014 WL 3418367, at *5 (N.D. Cal. July 11, 2014) ("because Plaintiff did not have a bankruptcy case pending when the Notice of Trustee's Sale was recorded on October 3, 2013, the Court rejects SPS's contention that Plaintiff was not a 'borrower' entitled to the protection of the HBOR."); *Foronda v. Wells Fargo Home Mortg., Inc.*, No. 14-CV-03513-LHK, 2014 WL 6706815, at *8 (N.D. Cal. Nov. 26, 2014) ("Consequently, at the time when the alleged misconduct took place, neither Foronda nor Divina had a pending Chapter 13 petition and thus Plaintiffs were not excluded from the definition of borrowers under section 2920.5(c)(2)(C).").

Here, the NOD of default and the February Notice of Trustee's Sale were recorded prior to

---

[5] In support of their argument against HBOR standing, defendants rely on *Foote v. Wells Fargo Bank, N.A.*, No. 15-CV-04465-EMC, 2016 WL 2851627, at *3 (N.D. Cal. May 16, 2016), but that case did not address the "borrower" definition under HBOR. They also rely on *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 818 (2016), but *Saterbak* discussed a different issue (whether HBOR was retroactive).

11

the bankruptcy case being filed.  The January 26, 2017 trustee's sale was set for after the bankruptcy case was closed.  Therefore, the now-dismissed bankruptcy case will not preclude plaintiff's HBOR claims.

### 2. Material Violation of § 2923.6

Defendants also argue any violation of § 2923.6 was not "material" and therefore not actionable.  *See, e.g., Foote v. Wells Fargo Bank, N.A.*, No. 15-CV-04465-EMC, 2016 WL 2851627, at *3 (N.D. Cal. May 16, 2016) ("for Plaintiff's action to survive, then, she must allege an HBOR violation that is 'material.'").

In order to succeed on her claim, McCarthy must show that she (i) submitted a complete loan application to BSI; (ii) the application was pending; and (iii) while it was pending, BSI either recorded a notice of a foreclosure sale or proceeded with a sale.  Defendants assert that plaintiff cannot make that showing because her application was denied initially on August 23, 2016, and the appeal denied on November 28, 2016.  Therefore, BSI was able to proceed with the trustee's sale on January 26, 2017.

There is no dispute that a new Notice of Trustee's Sale was filed and recorded in February 2016, before plaintiff had submitted her 2016 loan modification request.  And there does not appear to be any dispute that the January 26, 2017 Trustee's Sale was set and due to occur well after the HBOR-imposed 15 day wait period following the denial of her loan modification appeal.  Therefore, McCarthy cannot state a dual tracking claim, much less establish a likelihood of success on this ground.  Her counsel admitted as much at the oral argument.

In her Reply, plaintiff focuses instead on her claim that defendants have not undertaken a good faith review of her 2016 loan modification application because BSI's 2016 denials were actually based on the same rationale as the 2015 denials; that the Property is not her residence.  However, BSI's contemporaneous notes from 2015 show that BSI *did* consider McCarthy's financials and found McCarthy did not qualify for a loan modification given her debt and income ratio.  Moreover, the 2016 denial – while not detailed – specifically refers to McCarthy's "financial" and other information showing she did not qualify for a loan modification.  That denial does not raise the "residence" issue.

1    At oral argument, plaintiff's counsel argued that McCarthy never received the August 23,
2    2016 denial letter, and that at most her bankruptcy counsel may have been informed orally about
3    it. *However, there is no evidence supporting that assertion in the record.* The only evidence is
4    that BSI "informed plaintiff" that she did not qualify through the August 23, 2016 denial letter.
5    Spangler Decl. ¶ 29, Ex. 21.

6    The record also shows that plaintiff's bankruptcy counsel, who was representing plaintiff
7    in the Bankruptcy Court's Mortgage Modification Mediation Program, was aware of the denial
8    and appealed it, and indeed submitted additional documents to BSI to consider on the appeal. *See*
9    N.D.C.A. Bankruptcy Court Case No. 16-40613, Dkt. No 46 (asking for an extension of time to
10   complete the MMMP program, because "BSI denied debtor's application. Debtor appealed the
11   decision and BSI requested additional documents which were not considered in its review of the
12   application. Those documents were submitted through the portal and are currently under
13   submission.").[6] Taken as a whole, there is no evidence that BSI *did not* undertake a good faith
14   review of plaintiff's 2016 loan modification application. Instead, the evidence supports a
15   conclusion that BSI accepted and considered all documents plaintiff or her counsel provided in
16   that process and still denied plaintiff's modification request.

17   Finally and crucially, plaintiff does not provide *any evidence* showing that she should have
18   qualified for a conventional loan modification given her financials in August – November 2016
19   and considering her debt to income ratio. While at oral argument, plaintiff's counsel asserted that
20   plaintiff's financial situation had and continues to improve, *plaintiff failed to submit any evidence*
21   to back up that claim.

**CONCLUSION**

The record as a whole shows that BSI reviewed plaintiff's loan modification in good faith
and denied it given her "financial and other information." On this record, plaintiff has not shown

---

[6] Despite McCarthy being represented by counsel and despite the efforts of a third-party mediator, the MMMP was not successful and an agreement to modify plaintiff's mortgage could not be secured. *Id.*, Dkt. No. 48.

13

1  a likelihood of success on her HBOR claim and her request for a TRO is DENIED.

2  **IT IS SO ORDERED.**

3  Dated: March 7, 2017

William H. Orrick
United States District Judge